IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

Robin McBryde-Franklin                                              Plaintiff

v.                          No. 5:14-CV–417-BRW-JTK

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                      Defendant

## Instructions for Recommended Disposition

The following recommended disposition was prepared for U.S. District Judge Billy Roy Wilson. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Wilson may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## Recommended Disposition

Robin McBryde-Franklin seeks judicial review of the decision terminating her social security disability benefits. The Commissioner awarded benefits beginning October 16, 2007.[3] As part of the mandatory review process, the Commissioner reviewed McBryde-Franklin's case, determined McBryde-Franklin medically improved as of January 1, 2012, and notified her that benefits would cease on March 1, 2012.[4] McBryde-Franklin asked for continued disability benefits.[5] She claimed she was still disabled due to anger issues and knee problems.[6] After a hearing, the Commissioner's ALJ issued a decision denying the request.

**The Commissioner's decision**. The ALJ determined McBryde-Franklin medically improved as of March 1, 2012 — the date her benefits ceased.[7] The ALJ determined that, as of March 1, 2012, McBryde-Franklin had severe impairments — mood disorder, anxiety disorder, right knee arthroscopic surgeries with degenerative

---

[3] SSA record at pp. 55-59.

[4] *Id*. at pp. 59-60.

[5] *Id*. at p. 63.

[6] *Id*. at pp. 63 & 237.

[7] The ALJ's decision identified the no-longer-disabled date as March 1, 2012. That date is actually the date benefits ceased. The Commissioner had already determined that disability ended on January 1, 2012. The Commissioner's notice provided for two additional months of benefits; that is, until March 1, 2012. The difference has no bearing on the result in this case.

changes and osteophyte formation, and left knee chondromalacia with osteophyte formation[8]— but she could do some unskilled sedentary work.[9] Because a vocational expert identified available unskilled sedentary work,[10] the ALJ determined McBryde-Franklin was no longer disabled as of March 1, 2012.[11]

McBryde-Franklin asked the Commissioner's Appeals Council to review the ALJ's decision.[12] She submitted new evidence showing plans for a knee replacement in August 2013.[13] The Appeals Council considered the new evidence, added the new evidence to the record, and declined to review the ALJ's decision.[14] That action made the ALJ's decision a final decision for the purpose of judicial review.[15]

McBryde-Franklin filed this case to challenge the decision.[16] In reviewing the

---

[8]SSA record at p. 14.

[9]*Id*. at p. 19.

[10]*Id*. at pp. 50-51.

[11]*Id*. at p. 24.

[12]*Id*. at p. 7.

[13]*Id*. at pp. 609-20.

[14]*Id*. at pp. 1-5.

[15]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[16]Docket entry # 1.

decision, the court must determine whether substantial evidence supports the decision.[17] This recommendation explains why substantial evidence supports the decision.

**McBryde-Franklin's allegations**. McBryde-Franklin contends the Appeals Council erred in declining her request for review. She says the Appeals Council failed to properly consider her new evidence. For these reasons, she maintains substantial evidence does not support the decision.[18]

**Applicable legal principles**. When the Appeals Council considers new evidence and declines review, the district court lacks jurisdiction to review the action. Instead, the district court must determine whether the final decision is supported by substantial evidence in the record as a whole, including the new evidence.[19] For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to show

---

[17]*See* 42 U.S.C. § 423(f)(1) (decision to cease benefits must be supported by "substantial evidence which demonstrates that—(A) there has been any medical improvement in the individual's impairment or combination of impairments … and (B) the individual is now able to engage in substantial gainful activity"); *Delph v. Astrue*, 538 F.3d 940, 945 (8th Cir. 2008) ("When benefits have been denied based on a determination that a claimant's disability has ceased, the issue is whether the claimant's medical impairments have improved to the point where he is able to perform substantial gainful activity.").

[18]Docket entry # 18.

[19]*Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1995).

McBryde-Franklin improved enough to do unskilled sedentary work.[20]

**Medical improvement.**  The first question for the court is medical improvement.[21]  The Commissioner determines medical improvement by comparing the claimant's present condition with her condition at the time benefits were awarded.  To do that, the Commissioner compares current medical evidence with the prior medical evidence to determine whether "there have been changes (improvement) in the symptoms, signs or laboratory findings associated with [the claimant's] impairment(s)."[22]  This task requires the court to determine whether medical evidence showed improvement in McBryde-Franklin's symptoms, signs or laboratory findings as of March 1, 2012 as compared to the time benefits were awarded on March 25, 2008.

<u>Mental impairment</u>.  In March 2008, the mental diagnostic examiner diagnosed bipolar disorder, severe without psychotic features; cannabis abuse; and amphetamine abuse.[23]  According to the examiner, it didn't appear McBryde-Franklin was able to

---

[20]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").

[21]42 U.S.C. 423(f)(1) ("substantial evidence [must] demonstrate[] that— (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (B) the individual is now able to engage in substantial gainful activity").

[22]20 C.F.R. §§ 404.1594 & 416.994.

[23]SSA record at 393.

handle the demands of basic work like tasks due to untreated symptoms and psychomotor slowing.[24] She did not demonstrate the ability to perform tasks in an acceptable time frame.[25] An agency mental health expert opined that it didn't appear that McBryde-Franklin could perform even unskilled work in a consistent and predictable fashion.[26] This evidence indicates McBryde-Franklin lacked the capacity for the mental demands of work.

In December 2011, the mental diagnostic examiner diagnosed depressive disorder, anxiety disorder, post traumatic stress disorder, and pain disorder associated with medical and psychological factors.[27] Importantly, McBryde-Franklin had sought nor received mental health treatment since being awarded benefits.[28] She declined previously-prescribed psychotropic medications, choosing instead to control her mental symptoms through isolation.[29] McBryde-Franklin, however, shopped independently and attended her children's social functions. According to the examiner, McBryde-Franklin could cope with mental demands of basic work tasks and complete tasks

---

[24]*Id*. at p. 394.

[25]*Id*.

[26]*Id*. at p. 415.

[27]*Id*. at p. 491.

[28]*Id*. at p. 490.

[29]*Id*. at p. 486.

within acceptable time frame, unless tasks required too much social stress or exacerbated her knee pain.[30] Agency mental health experts opined that McBryde-Franklin was capable of unskilled work.[31] This evidence indicates McBryde-Franklin had the mental capacity to work. A reasonable mind would accept the comparison of medical evidence of mental symptoms as adequate to show medical improvement.

    <u>Physical impairment</u>. In January 2008, the agency physical examiner reported right knee pain.[32] McBryde-Franklin reported a history of four right-knee surgeries. Diagnostic imaging showed degenerative changes consistent with mild degenerative osteoarthritis.[33] An agency medical expert limited McBryde-Franklin to light work.[34] This evidence indicates McBryde-Franklin had the physical capacity to work, and that mental impairment was the basis for awarding disability benefits.

    In 2011, problems with the right knee resurfaced. McBryde-Franklin's doctor recommended injections to relieve knee pain.[35] McBryde-Franklin underwent one

---

[30] *Id*. at p. 492.

[31] *Id*. at pp. 502 & 555.

[32] *Id*. at p. 370.

[33] *Id*. at pp. 374-75.

[34] *Id*. at pp. 385.

[35] *Id*. at p. 544.

injection, but declined further injections because of a fear of needles.[36]  In August 2011, her doctor wrote "that her job requires her to be on her feet eight hours a day.  It would be beneficial to her if she could work sitting down for half this time, working half days on her feet at best."[37]  This indicates that McBryde-Franklin was working on her feet eight hours per day.

In March 2012, McBryde-Franklin reported no problems with her right knee, but complained about left knee pain due to a fall.[38]  Diagnostic imaging of the right knee showed moderate to advanced degenerative changes with fairly significant bone spurring.[39]  Imaging of the left knee showed mild to moderate degenerative changes with early bone spurring.[40]  Agency medical experts limited McBryde-Franklin to sedentary work.[41]  This evidence indicates McBryde-Franklin's physical ability to work declined from light work to sedentary work.

**Ability to work**.  The next question for the court is whether McBryde-Franklin

---

[36]*Id*. at pp. 542-43.

[37]*Id*. at p. 541.

[38]*Id*. at p. 248.

[39]*Id*.

[40]*Id*.

[41]*Id*. at pp. 527 & 550.

could work as of March 1, 2012.[42] If a claimant's medical condition improves, and she still has severe impairments, the Commissioner must determine whether the claimant can do her past work, and if not, whether she can perform other work.[43] In the past, McBryde-Franklin worked primarily in the fast food industry; she last worked as a shift manager. Her earnings history and IFP application indicate she worked in the fast food industry in 2011. A vocational expert classified the past work as skilled light work.[44] The ALJ required unskilled sedentary work because the medical evidence indicated the right knee prevented light work. The court must consider whether substantial evidence supports the determination.

Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[45] Sedentary work "represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very

---

[42] 42 U.S.C. 423(f)(1) ("substantial evidence [must] demonstrate[] that— (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (B) the individual is now able to engage in substantial gainful activity").

[43] 20 C.F.R. §§ 404.1594 & 416.994.

[44] SSA record at p. 48.

[45] 20 C.F.R. §§ 404.1567(a) & 416.967(a).

serious functional limitations."[46] In January 2012, McBryde-Franklin cared for two children, cleaned her home and washed laundry, shopped independently, attended her children's functions, and cleaned houses part-time.[47] These activities implicate no very serious functional limitation preventing sedentary work. According to agency medical experts, McBryde-Franklin could frequently lift 10 pounds.[48] The ability to lift 10 pounds is consistent with sedentary work. Sedentary work will not aggravate the knees because it requires little standing or walking.

The agency mental health expert opined that McBryde-Franklin can do unskilled work. Unskilled work involves incidental interpersonal contact, tasks learned and performed by rote, few variables, little required judgment, and simple, direct, concrete supervision. The ALJ required unskilled work. McBryde-Franklin claims she doesn't like to be around people, but she shops independently and attends her children's social events. To the extent she has problems with being around people, requiring incidental interpersonal contact accommodated those problems. A reasonable mind will accept the evidence as adequate to support unskilled sedentary work.

---

[46]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

[47]SSA record at pp. 51, 78 & 256-59.

[48]*Id.* at pp. 528 & 550.

The ALJ asked a vocational expert about available unskilled sedentary work. The vocational expert identified production assembly jobs like lamp shade assembler and general office clerks like document preparer as representative sedentary work.[49] The availability of work shows work exists that McBryde-Franklin can do, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[50] Because such work exists, substantial evidence supports the determination that impairments improved as of March 1, 2012 to the point that McBryde-Franklin could do unskilled sedentary work. To the extent she relies on new evidence, that evidence addresses a time period after March 1, 2012. It has no bearing on her condition as of that date.

**Conclusion and recommendation**. Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends DENYING McBryde-Franklin's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 25th day of September, 2015.

_____
United States Magistrate Judge

---

[49]*Id*. at pp. 50-51.

[50]42 U.S.C. § 1382c(a)(3)(B) (defining disability under social security disability law).